**NATIONAL LABOR RELATIONS BOARD v. WEIRTON STEEL COMPANY et al.**

No. 8041.

United States Court of Appeals Third Circuit.

Heard June 12, 1950.

Decided July 28, 1950.

Winthrop A. Johns, Washington, D. C., for N.L.R.B.

John E. Laughlin, Jr., and Clyde A. Armstrong, Pittsburgh, Pa., for respondents.

Clarence W. Meadows, Charleston, W. Va., for intervenor.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

PER CURIAM.

Upon consideration of the petition of the National Labor Relations Board for an adjudication in contempt and other relief, the report of Drayton Heard, Esq., the special master appointed by this court to take testimony and make findings thereon, the testimony taken by him, the exceptions filed by the respondents to the special master's report, and the motion filed by the National Labor Relations Board to affirm in part and reverse in part the findings of fact by the special master, and after full argument by counsel,

It Is Ordered, Adjudged and Decreed That:

A. The exceptions filed by the respondents to the report of the special master and the motion by the National Labor Relations Board to reverse in part the findings of fact by the special master are overruled and the report of the special master is approved and confirmed.

B. The findings of fact by the special master are approved and adopted by the court as follows:

(1) Formation of Weirton Independent Union resulted from the voluntary actions of a majority of Weirton Steel Company employees in furtherance of their own desire to belong to an unaffiliated union.

(2) There is not sufficient substantial evidence to find that the first WIU elections were dominated by Weirton Steel Company.

(3) After the first elections, Weirton Steel Company steadily increased its interference in WIU affairs, which culminated in paying its officers, stewards and other officials overtime in February, 1944, and thereafter, to take counter-measures against CIO attempts to organize Weirton employees. Those payments were made before, during and after the WIU adherents were assembled in its meeting hall to remain there until deputized by the sheriff, and long after the Governor of West Virginia took over the adequate policing by state troopers of sections of Weirton where labor disturbances might occur.

(4) As part of the same interference with the WIU and with the freedom of employees to join a union of their own choice, Weirton Steel Company, during the first half of 1944, discharged Stanley Socha, Harry Beckner, Virginius Hamill, Leo Cummings, Harry Givens, Walter Pfiller, Arb Warner, Laddie Birkhimer, Benjamin Kaminsky, Michael Burskey; evicted Steve Bartek, Jr. from his job; and laid off Mrs. Helen Warner, Mrs. Bessie Freshour, Mrs. Helen Brosky, Robert Yoho, John Cencarik, George Wooldridge, and Anthony Getsinger, Jr.

(5) The discharge of Harvey Hall and the discharge of Mrs. Helen Mateusiak Eafrate were for just cause.

(6) Weirton Steel Company's offers of reemployment to several or all of the individuals discharged or laid off were inadequate; so that half-hearted performances of Cencarik, Kaminsky and Burskey of the inadequate reemployment accepted by them are immaterial.

C. The respondents having failed and refused to comply with the decree of this court entered May 18, 1943, they and each of them are adjudged in contempt of this court by reason thereof.

D. The respondents shall purge themselves of the contempt:

(1) By withdrawing all recognition from and completely disestablishing Wierton Independent Union, Incorporated, as the representative of any of the employees for the purpose of dealing with respondent companies concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work;

(2) By refraining for the period of three months from the date of this order from recognizing any labor organization as the

representative of any of the employees for the purpose of dealing with respondent companies concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, unless it is certified as such representative by the National Labor Relations Board;

(3) By fully reinstating Harry Beckner, Michael Burskey, Harry Givens, Benjamin Kaminsky, Walter Pfiller and Stanley Socha to the positions which they held prior to their demotion on January 29, 1944;

(4) By fully reinstating Arb Warner, George Wooldridge; Leo Cummings, Virginius Hamill, Helen Warner, Bessie Freshour, Helen Brosky, John Cencarik, Anthony Getsinger, Jr., Steve Bartek, Jr., Robert Yoho, and Laddie Birkhimer to their former positions, or, if the same be unavailable, to positions substantially equivalent;

(5) By making whole each of the 18 individuals named in the two preceding paragraphs for any losses in pay which they may have suffered by reason of their respective demotions, discharges or lay-offs;

(6) By affording all their employees reasonable protection in their plants at all times from physical assaults or threats of physical violence directed at discouraging membership in or activities on behalf of any labor organization;

(7) By notifying all employees through notices (a) posted and maintained for sixty consecutive days in all conspicuous and accessible places customarily used for the posting of notices in the plants of respondent companies in Weirton and Steubenville, (b) distributed to all employees individually and (c) published in the *Weirton Steel Employees Bulletin* in ordinary type and on a single page in the issues published in two consecutive months, that respondents have been adjudged in contempt of the decree of this court entered May 18, 1943, that, pursuant to the order of this court,

respondents have withdrawn all recognition from and completely disestablished Weirton Independent Union, Inc., as the representative of any of the employees for the purpose of collective bargaining, that respondents will in all other respects comply with the order of this court and that the employees are free to become or remain members of any labor organization of their choice;

(8) By filing with the clerk of this court and with National Labor Relations Board in Washington, District of Columbia, within thirty days after the entry of this order a sworn statement showing in detail what steps they have taken to comply with this order; and

(9) By granting representatives of the National Labor Relations Board access to the plants and records of the respondent companies to verify compliance with this order.

E.  In order to enable the respondents to take the action hereinabove directed to purge themselves of contempt, the court will withhold for a reasonable time the issuance of attachments against them.

F.  The respondents shall pay to the National Labor Relations Board the sum of $38,750 to reimburse it for the costs of this litigation and for the payments heretofore made by it to the special master on account of his interim compensation pursuant to the orders of this court entered on March 4, 1946, January 6, 1947 and February 16, 1948.

G.  The respondents shall pay to Drayton Heard, Esq., special master, the sum of $10,000.00, in addition to the sums heretofore paid him under the orders of this court entered on March 4, 1946, January 6, 1947 and February 16, 1948, as full and final compensation for his services as special master in this case and the sum of $709.85 to reimburse him for his expenses as special master.