**SKYLINE HOMES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 19352.

United States Court of Appeals Fifth Circuit.

Aug. 11, 1967.

Rehearing Denied Sept. 22, 1967.

Larry S. Davidow, Detroit, Mich., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Standau E. Weinbrecht, Theodore J. Martineau, Attys., N. L. R. B., Washington, D. C., for respondent.

Before BROWN, Chief Judge, JONES, Circuit Judge, and BREWSTER, District Judge.

JOHN R. BROWN, Chief Judge:

The National Labor Relations Board petitioned this Court to adjudge Skyline Homes, Inc. in civil contempt because of the alleged disobeyance of a decree entered by this Court on November 22, 1963.[1] That decree enforced the Board's order requiring Skyline to cease and desist from certain practices and to take affirmative action.[2]

---

[1]. Skyline Homes, Inc. v. N.L.R.B., 5 Cir., 1963, 323 F.2d 642, cert. denied, 1964, 376 U.S. 909, 84 S.Ct. 662, 11 L.Ed.2d 607.

[2]. The order required Skyline to:
  1. Cease and desist from:
    (a) Refusing to bargain collectively in good faith concerning wages, hours, and other terms and conditions of employment with the United Brotherhood of Carpenters and Joiners of America, Carpenters Union No. 2292, as the exclusive representative of all production and maintenance employees of Skyline Homes, Inc. employed at its Ocala plant.

(b) In any other manner interfering with, restraining or coercing such employees in the exercise of their section 7 rights of the Act.
  2. Take the following affirmative action which the Board has found will effectuate the policies of the Act:
    (a) Upon request bargain collectively with the Union as the exclusive representative of all the employees in the appropriate unit and embody in a signed agreement any understanding reached.
    (b) Post at its plant in Ocala, Florida, copies of the notice * * *

Skyline's defense was that it realized it had to deal with the Union, but as it honestly believed the Union did not represent a majority, it was exercising its legal right to have this fact demonstrated.[3]

The Special Master [4] appointed by this Court to take testimony and receive evidence as to the matter filed a report adverse to Skyline, and Skyline contends that its recommendations are not supported by clear and convincing evidence.

We have carefully considered the evidence which was adduced before the Special Master. It was sufficient to warrant the Special Master concluding that the company in attempting to have the Union decertified as the exclusive representative of the employees shows a lack of good faith. Specifically, the Special Master found that the company acted in bad faith by sending erroneous and misleading letters [5] to the employees as to the relationship between the Union and the employees, by questioning the existence of, and refusing to give expression to, the Union's status as the exclusive bargaining agent, by delaying the posting of Board notices,[6] and negat-

ing the effect of the notices when they were finally posted, and finally by restricting negotiations to "day-to-day" terms and conditions and thereby excluding other non-economic, but mandatory, subjects of bargaining.

The proof was clear and convincing. This activity amounted to interfering with, restraining and coercing employees in contravention of subparagraphs 1(a) and (b) and 2(b) of the order of the Board issued November 14, 1961, as enforced and incorporated in the decree of this Court (see note 2 supra).

The Court substantially adopts the conclusions and findings of the Master. Accordingly, Skyline is adjudged in civil contempt of this Court. See N.L. R.B. v. Winn-Dixie Stores, Inc., 5 Cir., 1965, 353 F.2d 76.

Such being the case, Skyline must immediately take the following action to purge itself of contempt:

1. Upon request, bargain collectively in good faith with the union as the exclusive representative of its employees in the unit involved in this case and if any understanding is reached, embodying such understanding in a

---

3. The company not only refused to accept an exclusive-representation clause, it refused to acknowledge orally that the union was the exclusive representative. It would only state that it was going to abide by the Court's decree and bargain, but stood by its right to challenge the union's status by every lawful means, specifically, the appeal from the Regional Board's denial of the company's decertification petition.

4. The Board petitioned the Court for an adjudication of contempt on December 2, 1964; on December 21, 1964, the company filed an answer admitting in part and denying in part the allegations contained in the Board's petition. In an order of reference entered on February 9, 1965, the Court appointed Joseph W. Kaufman, Special Master to conduct a hearing on the issues raised and to file a report thereon with his recommendations as to findings of fact and conclusions of law.

5. Skyline's Counsel sent two letters to the employees containing the following:
"You do not have to belong to any

union. If you do not desire to, you do not have to attend the meeting scheduled for Thursday night. If there are a majority of you (as we believe it to be a fact) who do not desire to belong to the union, you will be afforded an opportunity to express your opinion by secret ballot at an election to be held by the National Labor Relations Board."
" * * * what we have told you, in response to your questions, is supported by the National Labor Relations Board."
Of course, Counsel knew that no such election would then be afforded as stated with respect to a certified union. It was also misleading to tell them that "you do not have to have the Union represent you if you do not want to."

6. The company alleges that in moving its plant to Ocala, Florida, the Notices furnished it by the Board were misplaced thus accounting for the late posting of the notices. The Special Master concluded that this allegation was not supported by any evidence, only "hearsay on hearsay."

signed agreement; and also desisting immediately from refusing to so bargain in good faith with the union as such representative.[7]

2. Immediately post in conspicuous places in its Ocala, Florida plant, including all places where notices to employees are customarily posted, for a period of sixty (60) consecutive days:

a. the appropriate portions of the notice originally required to be posted by the Court's decree;

b. an appropriate notice signed by Skyline which states (1) that Skyline has been adjudicated in civil contempt of Court for violating, resisting, disobeying and failing and refusing to comply with the Court's said decree and that Skyline will take the actions in purgation ordered by this Court, (2) that contrary to the impression created by Skyline, an election under Board auspices has not been imminent, and one is not to be anticipated until the Union has had a reasonable time to bargain on behalf of the employees, (3) that the Union is entitled, contrary to Skyline's prior statement, to represent the employees as their exclusive bargaining agent.

3. Maintain such notices in clearly legible condition throughout such posting period and insure that they are not altered, defaced or covered by any other material.

4. File a sworn statement with the Clerk of this Court and a copy thereof with the Director of the Twelfth Region of the Board, and separately notifying said Director of the Twelfth Region in writing within ten (10) days after the entry of the order of adjudication, showing what steps have been taken by Skyline to comply with the Court's directions, and until further order of the court file further periodic sworn statements every thirty

(30) days, as to Skyline's bargaining with the Union.

All costs of the proceeding are adjudged against the respondent. These shall include the expenditures made by the Board in investigation, preparation, presentation and stenographic reporting of the case, and the expenses (and salary or fee) of the Master, but shall not include salaries of Board counsel or employees.

---

7. We decline at this time to sustain the Board's cross assignment concerning Skyline's refusal to bargain about including a recognition clause in the contract. With respect to future bargaining hereby ordered the matter is too uncertain to declare in advance that any particular matter must be discussed or included in any resulting agreement.