**In re WINN–DIXIE STORES, INC., John Blackburn and J. R. King.**

No. 24632.

United States Court of Appeals
Fifth Circuit.

Oct. 25, 1967.

Rehearing Denied Dec. 5, 1967.

Supplement to Opinion Dec. 11, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Paul Elkind, Bernard Dworski, Thomas Canofax, Attys., N. L. R. B., Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., for petitioner.

Otto R. T. Bowden, Robert C. Lanquist, Charles F. Henley, Jr., Jacksonville, Fla., for respondent.

Before BELL, COLEMAN and GOLDBERG, Circuit Judges.

## OPINION AND ORDER.

GRIFFIN B. BELL, Circuit Judge:

This original proceeding in criminal contempt was commenced on the petition of the National Labor Relations Board alleging that Winn-Dixie Stores, Inc.; J. R. King, its Vice President; and John Blackburn, its Perishable Warehouse Superintendent, had knowingly, willfully and intentionally violated two decrees of this court. These decrees were entered in National Labor Relations Board v. Winn-Dixie Stores, Inc., 5 Cir., 1963, 324 F.2d 502, enforcing an order of the Board; and in National Labor Relations Board v. Winn-Dixie Stores, Inc., 5 Cir., 1965, 353 F.2d 76, wherein Winn-Dixie Stores was adjudged in civil contempt because of the disobeyance of the decree entered in the 1963 case.[1]

This court entered an order of notice under date of April 5, 1967 requiring Respondents to show cause why they should not be adjudged in and punished for criminal contempt by reason of the alleged violations. This order provided

1. The 1963 decree required Respondent Winn-Dixie Stores, Inc., *inter alia*, to cease and desist from:

"(a) Interrogating any of its employees regarding their union membership in, or activities on behalf of, any labor organization, or taking any affirmative action to determine who among its employees are or are not members of any labor organization, or seeking to induce any of its employees to withdraw from membership in a labor organization by solicitation and promises of benefit, or threatening to deny any of its employees privileges previously enjoyed by them for the purpose of discouraging membership in a labor organization.

\* \* \* \* \*

"(c) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist Meat Cutters, Packinghouse and Allied Food Workers Union, Local 433, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, or any organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection, or to refrain from any and all such activities, except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a con- dition of employment as authorized in Section 8(a) (3) of the Act."

The 1965 civil contempt decree required Winn-Dixie Stores, Inc. to take the following action to purge itself of contempt:

"1. Post in its Jacksonville division warehouse in each and every department thereof, including the meat and cheese processing, drug and houseware, grocery, and perishable departments in a conspicuous place for a period of sixty consecutive days copies of a notice signed by the president or a vice president of Respondent on behalf of Respondent stating that Winn-Dixie Stores, Inc. was adjudicated on the date hereof in civil contempt of the United States Court of Appeals for the Fifth Circuit for violating and disobeying a decree entered by the United States Court of Appeals for the Fifth Circuit under date of December 13, 1963. The notice must recite that Winn-Dixie Stores, Inc. will forthwith comply with said order and discontinue any activity in derogation of that order, and that Winn-Dixie Stores, Inc. specifically will not interrogate or in any manner interfere with, restrain or coerce its employees in the exercise of their rights to self-organization, to form a labor organization and to join or assist Meat Cutters, Packinghouse and Allied Food Workers Union, Local 433, Amalgamated Meat Cutters and Butchers Workers of North America, AFL–CIO."

This action was taken and the fact certified to the court.

that Respondents were to be accorded all rights and every protection accorded by law to persons accused of crimes. On the same date the court appointed counsel to prosecute the Respondents including counsel for the Board and also the United States Attorney for the Middle District of Florida.

The trial commenced on Monday, July 17, 1967 in the courtroom of the Court of Appeals, Jacksonville, Florida.[2] Defendants were arraigned and entered pleas of not guilty. Their motions for jury trial were overruled on the statement that defendants would be entitled to and would be accorded every right to which defendants in criminal contempt trials are entitled where jury trial is denied.[3]

The petition of the Board seeking the prosecutions was treated as the indictment or information in the case and delineates the charges against Respondents. The charges are contained in Paragraph IV and its subparts A through O.

The general charge is that Respondents knowingly, wilfully and intentionally violated the two decrees of the court through activities of Messrs. King and Blackburn which activities restrained and coerced the employees of Winn-Dixie in the exercise of their § 7 rights. 29 U.S.C.A. § 157.[4] This was said to have occurred through coercive interrogations regarding membership of employees or their activities in the Meat Cutters, Packing House and Allied Food Workers Union, Local 433, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO. The violations are also alleged to have occurred through threatening the employees with discharge for engaging in such membership or activities, offering them benefits to refrain from such activities, sponsoring activities designed to effect their withdrawal from union membership and the decertification of the union, soliciting them to inform on the union activities of fellow employees, and in like manner, in violation of the decrees, with otherwise interfering with, restraining and coercing the employees in the exercise of their § 7 rights.

**I.**

Subparts A through O set out the specifics of the alleged violative conduct and are in the nature of overt acts in criminal law pleading. The prosecution dismissed subpart A prior to trial and subpart N at the end of the trial. Motions for judgment of acquittal were granted as to Vice President King on all charges and as to Winn-Dixie and Superintendent Blackburn on subpart C at the close of the prosecution's case. Judgment of acquittal was granted as to Winn-Dixie and Mr. Blackburn at the close of the case with respect to the charges contained in subpart D. The grant of the motions was premised on a failure of proof.

Subparts I, J, K, L, and M related to a Winn-Dixie subsidiary corporation, Astor Products, Inc., and the charges contained in these subparts were dismissed at the close of the prosecution's case. The question with respect to them was whether the language of the decrees could be construed to include a subsidiary corporation which was not involved at all in the original Board proceeding or in the civil contempt proceeding. 324 F.2d 502, supra; and 353 F.2d 76, supra. The court concluded as a

---

2. In the interim Respondents duly answered denying the charges, a pretrial hearing was held, the issues to be tried were defined, pretrial memoranda were filed and orders were entered on all pending motions.

3. Cheff v. Schnackenberg, 1966, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629, 634; United States v. Barnett, 1964, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23.

4. 29 U.S.C.A. § 157:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *."

matter of law that the decrees could not be so construed in a proceeding for criminal contempt where the proof must show a knowing, willful and intentional violation beyond a reasonable doubt. See Hood v. United States, 5 Cir., 1964, 326 F.2d 33, and cases therein cited on standard of proof. Cf. Southwire Company v. National Labor Relations Board, 5 Cir., 1967, 383 F.2d 235, generally on the scope of a Board order in contempt proceedings.

The charges left in the case and which we must now consider are those set out in subparts B, E, F, G, H, and O. Our findings of fact and conclusions of law are set out in opinion form.[5] By way of a preliminary summary, we conclude on the facts that the charges contained in subparts F and G have been proven beyond any reasonable doubt and that Winn-Dixie and Mr. Blackburn are guilty and are to be adjudged so on these charges. We conclude that the charges contained in the remaining subparts were not proved beyond a reasonable doubt. The activities charged in the subparts do not lend themselves to seriatim discussion and instead they will be considered in logical sequence.

## II.

Subpart G is based on the charge that a company supervisor, Don Lunetta, threatened and coerced employee Clarence (Steve) Williams by informing him: "Steve, I don't know if you are messing around with any bad company like Soles (Charles L. Soles, a union leader), but if you are, I would advise you to get out of it" and that such activities could get Williams "into a lot of trouble". Williams testified substantially to this effect. Lunetta expressly denied the charges. The issue is credibility. By the time of the trial Williams had been discharged for arguing with a supervisor. Nevertheless, Lunetta testified that he was a clean-cut boy, always on time. Lunetta admitted that he talked with Williams

on the day in question but that his sole purpose and the sole occurrence was to give Williams a pay raise which was due him in the normal course of things, to compliment him on the fine job he was doing, and to determine whether Williams had any problems. He stated that Williams was very quiet and would only give him yes and no answers. This conversation took place one week before a union election involving the drug department of the Winn-Dixie warehouse in which Williams and Lunetta were employed.

Lunetta was the supervisor over Williams and Blackburn was the supervisor over Lunetta. Soles was a union leader employed in another department of the warehouse and Williams had signed a union card at the request of Soles. The only basis for discrediting Williams is the fact that he had been discharged. The only basis for discrediting Lunetta is his testimony that he had no concern with union activity in his department, that he had never heard anyone's name mentioned in connection with the union, and that he had never been asked by any of his supervisors to report to them on union activity in his department. This latter testimony was somewhat contradicted by his other testimony that Blackburn had asked him "whether anybody had been talking union-talk?" Moreover, Blackburn testified that he had instructed Lunetta to report on any union activity in Lunetta's department.

 We credit the testimony of Williams as against that of Lunetta under the circumstances and find that the charges contained in subpart G were proved beyond a reasonable doubt and that Winn-Dixie is responsible for this activity of its supervisor, Lunetta. The interrogation in question was coercive and threatening and specifically violated the aforesaid decrees of this court.

 Subpart B charges that Blackburn threatened job applicants Willie

---

5. Findings of fact within the meaning of Rule 52(a), F.R.Civ.P., may be set out as a memorandum opinion form. See

Myles v. Quinn Menhaden Fisheries, Inc., 5 Cir., 1962, 302 F.2d 146.

Evans and Robert McFarland with loss of employment by advising them that "the Union is no good. Don't sign no damn Union card, nor any kind of paper that concerns the Union. It could make you lose your jobs." The proof again depends entirely on credibility. Evans and McFarland testified that they were threatened with loss of employment if they signed a union card. Their testimony did not vary greatly in specifics from what is charged. They corroborated each other. Evans was also corroborated by his father, a company employee, who stated that Blackburn expressed his disappointment to him over his son having signed a union card. Mr. Blackburn denied the charges but did state that he followed the company policy which is expressed in a booklet, "You and Your Job" and which sets out the Winn-Dixie position regarding labor unions, in giving these two new employees the company's position with respect to unions. The company is against unions and he so stated. He also stated that he would not pay anyone to work. We credit Mr. Blackburn's version of the matter and hold that the evidence does not prove the subpart B charges beyond a reasonable doubt. Evans and McFarland had been discharged by the company for cause. Evans was subsequently discharged from the Army as being unable to adapt to military life. McFarland later sought to apply for employment at Winn-Dixie under an assumed name. In addition, it was apparent that they may have misunderstood some of the language from the booklet which was used by Blackburn.

Subpart O involves a former employee, Johnny Dollarson. The charge is that warehouse supervisor James Williams solicited Dollarson at the time he applied for a job to inform him if anybody mentioned anything to Dollarson about joining a union. Assuming *arguendo* that this minuscle activity would violate the decrees, the issue lies between Dollarson's version and the version given on trial by Foreman Williams. He, too, was using the booklet when he interviewed Dollarson. He was reading a part of the policy which is set out therein to the employees as a part of orientation. One statement contained in the booklet is that employees should not sign union cards unless they know what they are signing and what it might mean to them and their fellow employees. The validity of this booklet or any of its separate parts is not before the court in this criminal proceeding. It doubtless may have caused Dollarson to gain the impression that he was being asked to report union activity. There was also a basis for a misunderstanding in light of the company rule against union solicitation on company time which was called to Dollarson's attention. The proof with respect to this subpart simply does not rise to the level whereby we are convinced beyond a reasonable doubt that the charge is true. Dollarson was brought to the trial from Duval County jail where he was lodged pending disposition of felony charges unrelated to his former employment. Based on trial observation, we credit Supervisor Williams.

### III.

The following evidentiary background for the charges contained in subparts E, F, and H is uncontroverted. The meat processing department employees were represented for purposes of collective bargaining by Local 433, Meat Packers Union, and Winn-Dixie was under court order to bargain in good faith with the union. Decree entered pursuant to 324 F.2d 502, supra. The meat processing department is a part of a warehouse which contains other Winn-Dixie food departments. The employees in these other departments had not been organized but the same union was attempting to organize them. On April 1, 1966 Winn-Dixie removed the notices which this court required to be posted for sixty days in its contempt adjudication, the sixty day period having expired. On the same day the Board's petition for enforcement of its decision and order finding that Winn-Dixie had failed to bargain in good faith with the union representing the meat processing department was pending in this court. En-

forced as modified, National Labor Relations Board v. Winn-Dixie Stores, Inc., 5 Cir., 1966, 361 F.2d 512.

Subpart E charges that on or about April 1, 1966 Blackburn illegally solicited the employees of the meat processing department to withdraw from the union and to decertify the union by offering them benefits in the form of better working conditions and more money and by representing that employees of the company at Greenville, South Carolina had signed a petition to do away with the union there.

The proof disclosed that some of the employees asked Foreman Camp of the department how they could go about withdrawing from the union. This prompted Blackburn to make a speech to the assembled employees of the department in which he advised them that they could sign a petition that they no longer wished to be represented by the union. He advised the employees that a group of Winn-Dixie employees in Greenville, South Carolina had followed this course.

■ It goes without saying that it was not necessary for Blackburn to make such a speech simply because the employees wanted to know how to decertify the union. They could have gained this information in many ways less likely to violate the decrees of this court. Blackburn was so dominant in the situation that one witness, an employee otherwise favorable to Winn-Dixie stated that he gained the impression that the petition was being sponsored by Blackburn. Nevertheless, the weight of the evidence is that Blackburn made no promises and this is the charge. Only one of eight employees who testified with respect to the incident would assert that promises were made. We are left with a reasonable doubt on this charge.

The Blackburn speech was at least a step in the decertification movement and it supplies the background for subpart F. This subpart charges Winn-Dixie with having sought to induce the employees of the meat department to withdraw from the union and to cease their union activity. It is alleged that this was accomplished by posting a copy of a petition signed by twenty-three employees of the meat room wherein they stated that they no longer wished to be affiliated with the union. The petition was posted on the glass wall of the meat room office in full sight of the employees. It is undisputed that it was posted. Whether it was posted separately or as a part of a poster designed to combat the union movement in other parts of the warehouse is disputed but this is not material in our consideration. The fact is that five or six employees in the meat department had not signed the petition and the tendency would have been to coerce them. The petition, in the first instance, was Blackburn's brainchild. He was the head of the entire warehouse and suggested to the employees who were assembled at his direction that they could sign such a petition. Two employees then sponsored the petition and handed it to Foreman Camp who, in turn, gave it to Blackburn. Blackburn personally posted the petition.

■■ This activity violated the specific language of the 1963 decree of this court wherein Winn-Dixie, its officers and agents, are directed to cease and desist from seeking to induce any of its employees to withdraw from membership in a labor organization by solicitation. This subtle form of solicitation was solicitation nonetheless and the proof establishes the allegations of subpart F beyond a reasonable doubt.

Subpart H is concerned with company activity in connection with a Board election held on April 24, 1966. The company is charged with restraining and coercing its employees by fostering and sponsoring anti-union speeches by an employee, Perry Simmons. This employee was employed in the meat packing department and had signed the petition referred to in subparts E and F. The proof was that he volunteered to help the company in connection with its campaign of opposition to the union. It is not clear that he volunteered to speak for the company but the proof does not estab-

lish beyond a reasonable doubt that his speeches were those of the company rather than his personal predilection. He had the inclination and was seeking a forum. The tenor of his speech was that the union had not served the meat room employees well and that he had signed a petition to withdraw from the union. He held up a copy of the petition and urged the employees to think twice before voting for the union in the election. Blackburn helped him to prepare the notes from which he spoke. King thanked Simmons for helping the company.

 The proof was that Simmons was paid his regular time for making the three speeches in question at Jacksonville and was paid his regular time plus moderate expenses in connection with a similar speech made later to company employees in Tampa. We are left with a reasonable doubt on these charges. There can be little doubt that the company seized on the opportunity to use Simmons in its union opposition. He was a natural in view of the petition but the proof also is that Simmons first suggested the idea of helping the company. The required proof in a proceeding such as this for criminal contempt is much more stringent than that which would sustain an unfair labor practice ·finding. We conclude, on the basis of this stringent standard, that the proof on the charges contained in this subpart fall short beyond a reasonable doubt of the mark.

### ORDER

The court finds that it has been proved beyond a reasonable doubt that Respondents Winn-Dixie Stores, Inc. and John Blackburn knowingly, willfully and intentionally violated and disobeyed the decrees of this court as is charged in subpart F of the petition, and that Respondent Winn-Dixie knowingly, willfully, and intentionally violated the decrees of this court as is charged in subpart G of the petition. They have thereby committed criminal contempt of this court and of its lawful authority.

It is ordered that they and each of them be and they are hereby adjudged in criminal contempt of this court. They are ordered to appear before this court on the 11 day of December, 1967 at 2 o'clock P.M. in the courtroom of the United States Court of Appeals for the Fifth Circuit, Post Office Building, Jacksonville, Florida to be sentenced on the aforesaid adjudication of criminal contempt.

It is further ordered that the rule to show cause be and the same is hereby discharged to the extent of the remaining charges.

### SUPPLEMENT TO OPINION

Before BELL and GOLDBERG, Circuit Judges.

PER CURIAM.

On this 11th day of December, 1967, came the defendant, John Blackburn, in person and by his counsel, O. R. T. Bowden, and the defendant, Winn-Dixie Stores, Inc., appeared through its officers and counsel, O. R. T. Bowden.

The defendants having been found guilty of criminal contempt of this Court's decrees, as set out in this Court's Order of October 25, 1967, and the Court having asked the defendants whether they have anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the Court.

It is adjudged that the defendants are guilty as charged and convicted.

It is further adjudged that the United States of America shall have and recover from the defendant, John Blackburn, the sum of Five Hundred and no/100 ($500.00) Dollars, and that the United States of America shall have and recover from the defendant, Winn-Dixie Stores, Inc., the sum of Ten Thousand and no/100 ($10,000.00) Dollars, as fines imposed herein, said fines to be payable to the Clerk of this Court, either in the United States currency or by certified check.

It is ordered that the Clerk deliver a certified copy of this judgment to the United States Marshal or other qualified officer for execution.