**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CROWN LAUNDRY & DRY CLEANERS, INC., and Gulf Linen Service, Inc., Respondents.**

No. 24535.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1971.

2. *See generally* Williams v. United States, 426 F.2d 253 (9th Cir. 1970).

Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Paul Elkind, Atty., NLRB, Washington, D. C., for petitioner.

Richard C. Keenan, New Orleans, La., for respondents.

Before JOHN R. BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

WISDOM, Circuit Judge:

This case comes to us on a petition filed by the National Labor Relations Board to adjudge the respondents, Crown Laundry & Dry Cleaners, Inc. and Gulf Linen Service, Inc.,[1] in civil contempt of this Court for having failed and refused to comply with an order of this Court entered on November 10, 1967.

On July 14, 1965, the Board conducted an election to determine whether the Laundry, Dry Cleaning & Die House Workers' International Union, Local 218, would act as the bargaining representative for the employees of the Company. After losing the election, the Union filed objections with the Board. On August 26, 1966, the Board entered an order requiring the Company to cease and desist depriving its employees of the right to vote, free of any employer interference or coercion, in a Board election. The Board's order also set aside the first election and directed that a second election be held at an appropriate time. *See* 160 NLRB 746 (1966). On November 10, 1967, this Court entered its decision enforcing the Board's order. On May 29, 1968, the Board conducted the re-run election. The instant petition to adjudge the Company in civil contempt grew out of its conduct during the Union's organizational campaign just before the second election. In its petition the Board charged that the Company

1. Both respondents are a "single employer" within the meaning of the National Labor Relations Act, and are referred to in this opinion as "the Company".

had once again "subverted the employees' freedom of choice by threatening, coercively interrogating, and promising benefits to employees and otherwise interfering with, restraining, and coercing them in the exercise of their statutory rights to self-organization." A panel of this Court then entered an order appointing a Special Master to conduct hearings and file a report with the Court.

On January 26, 1970, the Special Master issued his report. He concluded that most of the specific acts complained of had indeed occurred and that they constituted violations of the Court's decree of November 10, 1967. In one important particular, however, the Special Master concluded that the evidence did not establish that the Company had discharged an employee, Hazel Bingham, because of her Union attitudes or activity. Based on these findings and conclusions, the Special Master recommended that the Court enter an order requiring the Company to purge itself of contempt by

(1) Fully complying with and obeying the Board's order as enforced by the Court, by ceasing and desisting from threatening, interrogating, making promises of benefits to employees or in any other manner interfering with, restraining or coercing employees in the exercise of their rights to self-organization.

(2) Mailing to each of its employees a notice to be furnished by the Board's Regional Office, and signed by an official of the Respondents, stating that the Respondents have been adjudged in civil contempt of this Court for disobeying its order and that they will not henceforth threaten, interrogate, make promises of benefits to employees or otherwise interfere with, restrain or coerce employees in the exercise of their protected activities; and further, posting copies of such notices together with the purgation order, in conspicuous places where notices to employees customarily are posted, for a period of 10 days before such new election as the Board may order, and maintaining such, in clearly legible condition throughout such posting periods and assuring that they are not altered, defaced or covered by any other material.

(3) Instructing their supervisors to comply with the provisions of the Court's order prohibiting threats, interrogation, promises of benefit and other conduct interfering with the employees' statutory right to self-organization; and taking reasonable steps to assure compliance with the Court's order.

(4) Upon request by the Union affording the Union reasonable access to the respondents' premises and appropriate facilities to deliver a 15 minute speech to employees on working time, the date thereof to be within 10 working days before, but not within 48 hours prior to, such new election as may be ordered by the Board.

(5) Upon request of the Union, immediately furnishing it with a list of the names and addresses of all of Respondents' employees.

(6) Filing a sworn statement with the Clerk of this Court and a copy thereof with the Director of the Fifteenth Region of the Board, within ten (10) days after the entry of adjudication in contempt, showing what steps have been taken by the Respondents to comply with the Court's directions, and filing further periodic sworn statements upon the scheduling of a new election, and again within five days after the election, specifying what steps have been taken to insure compliance by all supervisors with the terms of the Court's order.

(7) Paying to the Board fees and all costs and expenditures, including counsel fees, incurred by the Board in the investigation, preparation, presentation and final disposition of this proceeding.

(8) Reimbursing the Board for all costs incurred in the preparation and

conduct of such new election as may be scheduled.

## I.

The Company does not contest the Special Master's findings of fact. It does, however, object to the Special Master's conclusion that the Company's pre-election conduct constituted violations of § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), and this Court's order of November 10, 1967. The Company argues that it has not refused to comply with the Court's order; instead, it took substantial steps to insure that its supervisory personnel would not violate the Act or the Court's order and it should not be penalized for a low-ranking supervisor (Baxter) getting out of hand. Since the Company has not intentionally and wilfully violated the Court's order, it argues, it should not be adjudged in contempt.

The Special Master based his conclusions upon findings that on several occasions Baxter, the Company's Plant Superintendent, threatened or coerced employees in connection with the second representation election. Seeking to prevent an adjudication of contempt, the Company points out that "Baxter was the lowest ranking supervisor in this very small plant (about 20 employees), the violations were not extensive, and Baxter had been explicitly instructed by President Belleau not to engage in such discussions with employees." Nevertheless, even accepting these allegations as true, the Company acted in contempt of this Court's order.

In a contempt proceeding the Board "must meet a heavier burden of proof than in the ordinary unfair practice case. In a contempt proceeding the charges that the company has violated the decree must be established by clear and convincing proof." N. L. R. B. v. Laney & Duke Storage Warehouse Co., 5 Cir. 1970, 424 F.2d 109, 112. There can be no doubt that Baxter's repeated threats, questions, statements, and warnings constituted violations of § 8(a) (1) of the Act and this Court's decree. *See,* e. g., N. L. R. B. v. Borden Co., 5 Cir. 1968, 392 F.2d 412, 414 n. 4; N. L. R. B. v. Camco, Inc., 5 Cir. 1964, 340 F.2d 803, 804–807. Similarly, there can be no doubt that Baxter filled a responsible management position in the plant. Thus, unless the Company had effectively repudiated Baxter as a spokesman for management, it is responsible for his actions despite any explicit contrary instructions to him. N. L. R. B. v. American Mfg. Co. of Texas, 5 Cir. 1965, 351 F.2d 74, 78; *cf.* In re Winn-Dixie Stores, Inc., 5 Cir. 1967, 386 F.2d 309, 313; Hendrix Mfg. Co. v. N. L. R. B., 5 Cir. 1963, 321 F.2d 100, 104.

The absence of wilfulness on the part of the Company's top management cannot relieve the Company from civil contempt. The crucial issue in civil contempt proceedings, as distinguished from criminal contempt, is not the employer's state of mind but simply whether the Court's order was in fact violated. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599, 604; N. L. R. B. v. Lawley, 5 Cir. 1950, 182 F.2d 798, 800. Since clear and convincing evidence supports the Special Master's conclusion that the Company, through its agent Baxter, has violated the Act and this Court's earlier order, we have no choice but to adjudge the Company in civil contempt.

## II.

The Board supports the findings and conclusions of the Special Master —with one exception. The Board objects to the Special Master's failure to find that the Company discharged employee Hazel Bingham because of her Union activity. The Special Master found as a fact that Hazel Bingham's discharge "was solely motivated by Plant Superintendent Baxter's belief that she was not properly performing her duties and that this improper performance had caused the loss of the company's largest industrial uniform account." Rule 53(e) (2), F.R.Civ.P., makes the Special Master's findings of fact binding on this Court unless clearly erroneous. N. L. R.

B. v. Alamo Express, Inc., 5 Cir. 1968, 395 F.2d 481, 482. We have reviewed the evidence presented to the Special Master on the issue of Hazel Bingham's discharge and conclude that his finding is not clearly erroneous.

### III.

In addition to its objection that an adjudication of contempt is not warranted, the Company objects to certain items of the Special Master's recommended remedy. The items to which the Company objects include both remedial provisions and cost provisions.

#### A. Objections to Remedial Provisions

The Company argues that the posting of a notice and a copy of the Court's order for a period of 60 days should be ample notification to employees that the Company has been held in civil contempt. In its view, the additional requirements in Item 2 of a mailing and a second posting for ten days before any new election are both unnecessary, burdensome, and demeaning.

In considering the propriety of the Special Master's recommended remedial provisions, however, we should bear in mind that the Company has twice deprived its employees of the opportunity to vote, free of employer coercion, in a Board election. The second violation, moreover, directly contravened an order of this Court enforcing the usual cease and desist order. It is apparent, therefore, that the minimal remedial provisions imposed earlier were insufficient to deter future unlawful conduct on the part of the supervisor. The Company is thus in a poor position to complain of remedial provisions designed to insure adequate conditions for a third election.

■ In the factual context of this case, the requirements of a mailing and a pre-election posting are appropriate and reasonable provisions to carry out national labor policies. *Cf.* Fibreboard Paper Products Corp. v. N. L. R. B., 1964, 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233, 241–242. These provisions will both help remedy the coercive effects of the Company's contemptuous conduct and impress upon the Company and its employees the Board's obligation and determination to hold a fair election. Neither provision is unduly burdensome. Courts before us have utilized such provisions in similar circumstances. *See, e. g.,* J. P. Stevens & Co. v. N. L. R. B., 5 Cir. 1969, 417 F.2d 533; International Union of Electrical, Radio & Mach. Workers v. N. L. R. B., 1967, 127 U.S.App.D.C. 303, 383 F.2d 230; N. L. R. B. v. Weirton Steel Co., 3 Cir. 1959, 183 F.2d 584.

■ The Company also argues that the Item 4 requirement that the Company afford Union representatives an opportunity to deliver a fifteen minute speech to employees on Company time within ten days of any new election is unwarranted. Such a remedy is unusual. It must be remembered, however, that the usual remedial provisions proved insufficient in this case. "Stronger medicine" is now necessary. Fifteen minutes of Company time for a Union speech is neither harsh nor burdensome. Moreover, one Union speech will not impair the employees' free choice, as the Company is free to make as many noncoercive speeches as it likes on Company time and property. We therefore approve Item 4 of the Special Master's recommendations. *See* International Union of Electrical, Radio & Mach. Workers v. N. L. R. B., 1967, 127 U.S.App.D.C. 303, 383 F.2d 230, 232 n. 4; *cf.* J. P. Stevens & Co. v. N. L. R. B., 5 Cir. 1969, 417 F.2d 533; Decaturville Sportswear Co. v. N. L. R. B., 6 Cir. 1969, 406 F.2d 886.

■ Finally, the Company argues that it should not be required immediately to furnish the Union with the names and addresses of its employees. This requirement—Item 5 of the Special Master's recommendations—is now standard pre-election practice under the Board's *Excelsior* rule [2] and has received

---

2. *See* 156 NLRB 1236 (1966).

the approval of both this Court and the Supreme Court. N. L. R. B. v. Wyman-Gordon Co., 1969, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709; Howell Refining Co. v. N. L. R. B., 5 Cir. 1968, 400 F.2d 213. *See also* N. L. R. B. v. Hanes Hosiery Div., 4 Cir. 1967, 384 F.2d 188. The Company argues, however, that an order requiring it to furnish a mailing list would be a retroactive application of the rule, which the Board itself could not order. This contention is without merit. The Board's decision not to order production of a mailing list in connection with the previous elections does not mean that it may not do so for a future election. In one respect, however, we must modify Item 5. The requirement that the Company produce a mailing list—like the second posting and Union speech provisions—should be contingent upon the Board's direction of a new election. As modified, then, Item 5 of the Special Master's recommendations is approved.

B. *Objections to Cost Provisions*

The Company contends that Items 7 and 8—payment of all costs of this proceeding, including the salaries of Board counsel and employees, and the costs of any new election—would place an undue burden on the Company. In support of its argument, the Company stresses the fact that it is a small and declining company in a highly competitive business.

As far as the costs of this proceeding are concerned, we cannot accept the Company's argument. Contemnors are commonly required to pay the salary and expenses of the Special Master and the expenses incurred by the Board in the investigation, preparation and presentation of contempt proceedings. *See, e. g.*, Skyline Homes, Inc. v. N. L. R. B., 5 Cir. 1967, 381 F.2d 706, 708. We see no reason why the Company should not bear these costs in this case. We do think, however, that the Company should not be ordered to pay the full salaries of Board counsel and employees. We therefore modify Item 7 of the Special Master's recommendations to assess only one-half of those expenses against the Company. Finally, we conclude that the Company should not bear the cost of any new election that the Board may direct. Therefore we disapprove Item 8 of the Special Master's recommendations.

IV.

For the above reasons, the findings and conclusions of the Special Master are affirmed. Accordingly, the Company is adjudged in civil contempt of this Court's previous decree. To purge itself of such contempt, we order the Company to take the steps set out above in Items 1 through 7 of the Special Master's recommended remedy, except as modified by the instant opinion.

In the event that the Company does not comply with this decree, the Court, upon application of the Board, will take such further action as may be just, reasonable, and necessary to assure compliance.