## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## SATILLA RURAL ELECTRIC MEMBER-SHIP CORPORATION, Respondent.

### No. 20118.

United States Court of Appeals
Fifth Circuit.

March 6, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Assoc. Gen. Counsel, N. L. R. B., Stuart Broad, Atty., N. L. R. B., Washington, D. C., for petitioner.

E. Kontz Bennett, Waycross, Ga., Bennett, Pedrick & Bennett, Waycross, Ga., of counsel, for respondent.

Before TUTTLE and JONES, Circuit Judges.*

### ON CITATION FOR CIVIL CONTEMPT

TUTTLE, Circuit Judge:

On July 26, 1963, this court entered a judgment enforcing an order of the National Labor Relations Board v. Satilla Rural Electric Membership Corporation, 5 Cir., 322 F.2d 251. Although the respondent's main defense to the Board's petition in that case had been that the elected bargaining agent no longer represented a majority of the members of the unit as designated, this court held that the "board was adequately justified on this record to enter its order requiring the respondent to bargain collectively in good faith with the union until it is clear that a contract can be agreed upon or that a true impasse has occurred." We rejected the proposition that the loss of a majority of the employees during the period within which the certification was effective could be relied upon by the employer as justifying the termination of bargaining, once begun, until there was an impasse in negotiations. 322 F.2d 251, 253.

---

* The court originally consisted of Judges Tuttle, Jones and District Judge DeVane. Judge DeVane now being deceased, the court acts as a quorum. See 28 U.S.C.A. § 46(d).

Here, on this contempt proceeding, the respondent offers the same defense, notwithstanding the direct order of the Board, ordered by us to be enforced, that the respondent "bargain collectively in good faith" and "when an understanding is reached, embody such understanding in a written agreement." The company, after nine bargaining sessions, and at a time when its principal negotiator later made it plain that there were only "small differences" between the parties regarding the contract and that there would not be "any trouble in getting together on a contract" if the majority status of the union were demonstrated, the special master appointed to take evidence in this proceeding found "the Satilla spokesman (primarily Mr. Bennett) made it clear that Satilla would not sign an agreement without an election."

After exhaustive hearings, proposed findings of fact filed by each party, findings by the special master, the filing of exceptions to the findings of the special master, and the filing of full briefs by the parties, the matter comes back to this court to determine whether such refusal by the respondent to proceed to a final negotiation of a contract was in violation of the judgment of this court.

We conclude, as did the special master here, that there is a strong parallel between the proceedings which culminated in the original order of this court in 1963, and the proceedings that followed our judgment. In the first case, after several months of desultory negotiations, it began to appear that the parties were getting close to an agreement; whereupon the respondent challenged the majority status of the union. So, too, here, beginning several months after the decision of this court nine bargaining sessions were held over a period of approximately eight months, at which time the union in effect offered to continue to work under a contract substantially embodying present working conditions but requested a wage increase of approximately twelve cents per hour across the board; whereupon again the respondent, commenting on the fact that an employee had filed a decertification petition, (later dismissed by the regional director) questioned whether an agreement should now be reached in view of the doubt raised as to the majority status of the union. The representative of the respondent asked the negotiator for the union whether he would be willing to have an election, to which the latter responded that there had already been an election and he proposed to continue to negotiate under the authority of this court's order. Thereupon, as found by the special master, in his findings number 30, "the Satilla spokesman made it clear that Satilla would not sign an agreement without an election."

We conclude that there was ample record support for this finding.

This is not in compliance with the order of this court. Our order required that negotiations be carried on in good faith and, if agreement was reached, such agreement be reduced to writing. Here, by the evidence supplied by respondent itself, the differences separating the parties was small. This clearly indicates that there was no impasse. This is further indicated by the fact that the whole contract could have been settled upon terms substantially agreed upon between the parties, but for the demand made by the negotiator for the employees for a twelve cent an hour increase, when taken in consideration of the fact that subsequently increases were granted after the termination of the negotiations that exceeded in cost to the company the wage increase sought by the negotiator.

This court is able to observe, from the course of this litigation, the nature of the briefs filed, and the manner in which both the original negotiations and those carried on after the issuing of our order of 1963 have been conducted that the company's representatives were negotiators. There could be no real misunderstanding about the meaning of this court's use of the word "impasse" which would justify the respondent's substituting its doubt as to majority status for the requirement that it bargain to a genuine impasse.

The special master, over the board's objection, found that the subsequent pay raises granted after the respondent considered negotiations at an end, were not a separate violation of the judgment of this court as being in bad faith. While, if we were passing on the motives and intent of the parties as the finder of facts, we might, as we do, say that in light of the whole proceedings, the company's conduct with respect to the granting of the pay raises was suspiciously like an effort to minimize the value of the union, we cannot determine that the findings of the special master in this regard were wholly erroneous.

We conclude that the findings and conclusions of a special master should be affirmed in all respects. Satilla Rural Electric Membership Corporation, respondent, is adjudged in civil contempt of this court's order of October 16, 1963.

The National Labor Relations Board is requested to submit a proposed order, with copy to the respondent, for consideration by the court in carrying this judgment into effect.