**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**JOHNSON MANUFACTURING COMPANY OF LUBBOCK, Respondent.**

**No. 24511.**

United States Court of Appeals, Fifth Circuit.

April 6, 1972.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Paul Elkind, Washington, D. C., Peter G. Nash, General Counsel, Howard C. Hay, Atty., N. L. R. B., for petitioner.

John E. Price, Price, Landa & Associates, Fort Worth, Tex., for respondent.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

This case is again before the Court on the petition of the National Labor Relations Board to adjudicate respondent Johnson Manufacturing Company in civil contempt for failing to comply with the order of this Court enforcing a Board order directing the respondent to cease and desist from refusing to bargain in good faith with the union, from threatening its employees with strikes or loss of jobs, and from otherwise interfering with the attempts of the union at collective bargaining. N. L. R. B. v. Johnson Manufacturing Company of Lubbock, No. 24,511, April 5, 1967 (unpublished).

The main thrust of the Board's petition is the contention that the company has failed to bargain in good faith since

the entry of our order. Upon the filing of the petition we referred the case to a special master who conducted extensive hearings. He concluded that with respect to each of the Board's allegations there was a failure to show by clear and convincing evidence that our order had been violated, as required in civil contempt proceedings, N. L. R. B. v. Laney & Duke Storage Warehouse Co., 5 Cir. 1970, 424 F.2d 109, 112, and accordingly recommended that the petition for contempt be denied. The Board filed exceptions to his report and recommendations. Convinced that the master's conclusions are in part erroneous, we decline to follow the recommendation.

We shall deal separately with the Board's exceptions. First, the Board contends that the master erred in finding that the company did not violate our order by its failure to provide the union with necessary and requested information concerning the company's wage adjustment system for merit increases, thereby preventing the union from undertaking effectively its bargaining responsibilities. The system was supposed to provided quarterly wage adjustments under a merit performance system, although in practice little managerial discretion was involved in making the adjustments. An employee doing a satisfactory job was rated as "normal" in performance and received a five cents per hour increase in wages per quarter; employees who were doing an exceptional job received a rating of "above normal" and received a higher per hour quarterly wage increase; those doing an unsatisfactory job were given a "below normal" rating and received no increase. Each employee was evaluated by his foreman ostensibly under a "check list", containing such considerations as quantity and quality of work, soundness of judgment, assumption of responsibility, and alertness. The evaluations were reviewable by a wage review committee comprised of the company president, the production manager, the personnel manager, and the employee's department foreman. While the review board would automatically approve the rating of "normal" given by the department foreman, any rating of above or below normal would initiate a review by the company committee under the applicable "check list" factors. The master found that in reality the foreman did not use these criteria but rather relied merely upon their personal observations of an employee's performance. Statistically, it was shown that only about two percent of the company's employees were evaluated as other than "normal" each quarter, and hence received any kind of real merit evaluation. There was, therefore, little in this wage adjustment system to bargain about.

The Board contends that the union, in an attempt to assume its bargaining responsibility, repeatedly asked for specific information regarding the evaluation of each employee under the system and received no responses from the company. It is claimed that the Union desired to know exactly how each employee measured up to the "check list" factors used by the company in determining merit wage increases.

The master found that the company advised the union of the existence of these factors and what the specific standards were, that the company notified the union by letter each quarter indicating its proposed adjustments pursuant to these evaluations and how each employee had been evaluated thereunder, and that the company met with the union each quarter to negotiate the proposed adjustments. He further found that the company did not fail to answer the relatively few questions posed by the union about specific employees who had not received the "normal" rating. Finally, it is apparent that in the application of the company's procedures the great majority of the employees rated "normal" and receiving the automatic increase actually were not subject to a specific evaluation, and consequently no specific information in this regard existed. The master therefore concluded that there was no clear and convincing evidence of the company's failure to bar-

gain in good faith concerning these wage increases. We agree.

While we do not find, under these circumstances, contemptuous conduct on the company's part, with respect to its merit adjustment system, the necessity for broad disclosure in cases involving wage and hour negotiations, N. L. R. B. v. Item Co., 5 Cir. 1955, 220 F.2d 956, 958, cert. denied 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746, and the "affirmative duty of the union to intelligently evaluate all employee benefits for which it is negotiating," Cone Mills Corp. v. N. L. R. B., 4 Cir. 1969, 413 F.2d 445, 446, requires a restructuring of the standards of evaluation. We shall therefore direct the company to enter into negotiations with the union in the formulation of new standards to be used in the determination of merit pay increases. See N. L. R. B. v. Southern Coach & Body Co., 5 Cir. 1964, 336 F.2d 214, 218.

The second exception of the Board is directed to the master's finding that the company did not violate our Order by continuing to adhere to an unalterable demand that it exercise complete control over all aspects of wage and working conditions, buttressed by an insistence upon union relinquishment of its statutory right to prior negotiation before the effectuation of working condition changes by the company. The Board argues that the conduct of the company following our order is parallel to the conduct found unlawful by the Board and condemned by our enforcement order. N. L. R. B. v. Satilla Rural Electric Membership Corporation, 5 Cir. 1968, 393 F.2d 134, 135.

In the decision of August, 1966 the trial examiner and the Board found that

"throughout the course of bargaining the Company insisted on retaining unilateral control of matters which are traditionally bargainable subjects; that is, wages, hours, suspensions, disciplinary actions, discharges, and other conditions of employment, while at the same time insisting that the Union forfeit its primary defense to em-

ployer abuse of control. Moreover, the Respondents' insistence that the Union give up its right to bargain about, or to arbitrate, labor disputes in return for an agreement which merely incorporated existing company practices, and merely providing the Union with the right to strike in protest of alleged violations of the contract during its term, was an unfair demand of the Union . . . The Company was unwilling to offer any provisions which would give its employees or the Union anything more than they would have with no contract at all. As pointed out, the Company insisted as a price for any contract, that its employees give up their statutory rights to be properly represented by a union and contemporaneously insisted that the Union's hands be tied in the effective processing and settling of employee grievances . . .."

We enforced the Board's order because these findings clearly demonstrated surface bargaining used as a cloak to conceal the employer's bad faith. Chevron Oil Co. v. N. L. R. B., 5 Cir. 1971, 442 F.2d 1067, 1072–1074; Sweeney & Co. v. N. L. R. B., 5 Cir. 1971, 437 F.2d 1127, 1134–1135; A. H. Belo Corp. v. N. L. R. B., 5 Cir. 1969, 411 F.2d 959, 969, cert. denied 396 U.S. 1007, 90 S.Ct. 561, 24 L.Ed.2d 498; N. L. R. B. v. Athens Mfg. Co., 5 Cir. 1947, 161 F.2d 8; Stonewall Cotton Mills v. N. L. R. B., 5 Cir. 1942, 129 F.2d 629, 631; cert. denied 317 U.S. 667, 63 S.Ct. 72, 87 L.Ed. 536; N. L. R. B. v. Whittier Mills Co., 5 Cir. 1940, 111 F.2d 474, 478.

■ The Board has clearly shown in the record before the master that after our order of enforcement of the Board's order: (1) the company insisted on retaining unilateral and final control over periodic wage increases, employee qualifications, discipline and working rules, job assignments, working hours, wage levels, and other conditions of employment such as sick leave; (2) that the company insisted that any contract or agreement contain a clause reserving to management all rights that management

did not give up specifically in the terms of the agreement; (3) that any contract contain a "zipper clause" preventing the union from bargaining during the term of the agreement over any matters previously discussed in the contract negotiations, and (4) that any contracts contain a union relinquishment of the right to bargain over the resolution of employee grievances or to compel arbitration of disputes.

Upon this factual showing the master concluded that each of the company's post-order proposals, and its overall post-order bargaining position, are not unlawful, in part or in combination. We do not agree. The post-order proposals and positions of the company precisely parallel the surface bargaining we condemned in our enforcement order.

We have carefully considered the Board's other contentions and find them to be unsupported by clear and convincing evidence.

### ORDER

It is ordered that the Report of the Special Master, appointed herein, is approved and adopted to the extent not specifically disapproved in the opinion of the Court.

Ordered that respondent, Johnson Manufacturing Company of Lubbock, is hereby adjudged in civil contempt of the order of this Court entered April 5, 1967.

Further ordered that respondent, Johnson Manufacturing Company of Lubbock, as the Company and acting through its officers, agents, successors and assigns, shall forthwith purge itself of such contempt by:

1. Ceasing and desisting from:

(a) refusing to bargain in good faith with Local 826, International Union of Operating Engineers, AFL–CIO, hereinafter the Union, as the exclusive representative of all respondent's employees as set forth in the appropriate bargaining unit.

(b) violating in any other manner this Court's Order of April 5, 1967.

2. Taking the following affirmative action in purgation:

(1) Upon request, bargain collectively with the Union named herein, as the exclusive representative of the bargaining unit.

(b) Specifically, in the course of such bargaining negotiations, if requested,

(1) eliminate its continued and rigid insistence upon unilateral, complete, and final control over all aspects of wage and working conditions, found by the Board to be unreasonable, and

(2) eliminate its continued and rigid insistence upon Union relinquishment of statutory rights of effective participation in grievance negotiation and the settlement of labor disputes, and of effective representation in consideration of changes in working conditions by the Company during the course of Agreement.

(c) Immediately post in conspicuous places, including all places where notices to employees customarily are posted, for a period of sixty (60) days, consecutively, copies of an appropriate notice, with this order annexed, to be prepared by the Board and furnished to respondent, signed by an officer of the Company, which states that the Company has been adjudicated in civil contempt of Court for violating and disobeying and failing and refusing to comply with the Court's judgment, and that it will undertake forthwith appropriate action in purgation, such notices and copies of this order to be maintained in clearly legible condition throughout such posting period, and insure that they are not altered, defaced or covered by any other material.

(d) File a sworn statement with the Clerk of this Court, and a copy thereof with the Regional Director of the Board within ten days after the entry of the order of adjudication and again at the end of the 60-day posting period provided in paragraph (c) above, showing

what steps have been taken by the Company to comply with this order.

Further ordered that the Company begin immediately, in connection with its merit wage adjustment plan, the specific evaluation of all employees making available to the Union these evaluations in substance and result, and promptly enter into good faith negotiations with the Union for a restructuring of the standards of employee evaluation used under the merit wage adjustment plan to the end that the union may be effective as the bargaining agent in the area of merit increases.

Further ordered that upon failure of the respondent to purge itself of civil contempt as above provided, the Court shall issue attachment against respondent directed against its officers, representatives and agents.

The Court retains jurisdiction to take such further action and grant such other and further relief as may be necessary to assure compliance with the Court's previous order and with this Order for purgation of civil contempt.