NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JOHNSON MANUFACTURING COM-
PANY OF LUBBOCK, Respondent.

No. 24511.

United States Court of Appeals,
Fifth Circuit.

April 14, 1975.
Rehearing and Rehearing En Banc
Denied June 3, 1975.

Elliott Moore, Deputy Assoc. Gen. Counsel, N. L. R. B., Elinor H. Stillman, Paul Elkind, Chief, Contempt Litigation, Office of the Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Wesley K. Martin, El Paso, Tex., for respondent.

James R. Edwards, Lubbock, Tex., amicus curiae.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

BELL, Circuit Judge:

On April 5, 1967 this court enforced an order of the National Labor Relations Board directing respondent to cease and desist from refusing to bargain in good faith with Local 826, International Union of Operating Engineers, AFL–CIO, from threatening its employees with loss of jobs, and from otherwise interfering with the attempts of the union at collective bargaining. NLRB v. Johnson Manufacturing Company of Lubbock, No. 24,511, April 5, 1967 (unpublished).

On April 6, 1972, this court entered its order adjudging respondent in civil contempt for failing to comply with the April 5, 1967 order. NLRB v. Johnson Manufacturing Company of Lubbock, 5

Cir., 1972, 458 F.2d 453. The thrust of the civil contempt adjudication was failure of respondent to bargain in good faith. We found that (1) respondent failed to negotiate with the union concerning employer evaluation standards for determining merit pay increases; (2) respondent insisted on unilateral control of all aspects of wage and working conditions; and (3) engaged in a process of surface bargaining condemned in the April 5, 1967 order.

Respondent was required to purge itself of civil contempt in the following terms:

"Further ordered that respondent, Johnson Manufacturing Company of Lubbock, as the Company and acting through its officers, agents, successors and assigns, shall forthwith purge itself of such contempt by:

1. Ceasing and desisting from:

(a) refusing to bargain in good faith with Local 826, International Union of Operating Engineers, AFL–CIO, hereinafter the Union, as the exclusive representative of all respondent's employees as set forth in the appropriate bargaining unit.

(b) violating in any other manner this Court's Order of April 5, 1967.

2. Taking the following affirmative action in purgation:

(1) Upon request, bargain collectively with the Union named herein, as the exclusive representative of the bargaining unit.

(b) Specifically, in the course of such bargaining negotiations, if requested,

(1) eliminate its continued and rigid insistence upon unilateral, complete, and final control over all aspects of wage and working conditions, found by the Board to be unreasonable, and

(2) eliminate its continued and rigid insistence upon Union relinquishment of statutory rights of effective participation in grievance negotiation and the settlement of labor disputes, and of effective representation in consideration of changes in working conditions by the Company during the course of Agreement.

\* \* \* \* \* \*

Further ordered that the Company begin immediately, in connection with its merit wage adjustment plan, the specific evaluation of all employees making available to the Union these evaluations in substance and result, and promptly enter into good faith negotiations with the Union for a restructuring of the standards of employee evaluation used under the merit wage adjustment plan to the end that the union may be effective as the bargaining agent in the area of merit increases."

On October 5, 1972, the board was again before this court alleging that respondent had failed to comply with the April 6, 1972 order. The company's president, Robert C. Johnson, Jr., and its personnel manager, R. G. Box, were named individually in the complaint. The board prayed for a writ of body attachment as to them until respondent complied with the order, together with the imposition of fines.

After requiring responses the matter was referred to a special master for the purpose of receiving evidence on issues presented and to report to the court. The matter is now before the court on the report of the master.

We have carefully considered the comprehensive report including the findings of fact and conclusions of law contained therein as well as the record made before the master. We find ample support in the record for the findings of fact and no error in the conclusions of law. In sum, we conclude that respondent and its president are in flagrant contempt of the April 6, 1972 order of this court.[1]

1. We are advised by the board that personnel director Box is no longer employed by respondent. We find it unnecessary for adjudication or remedial purposes to discuss his role in the contempt activity. The extent of his activity as an agent and employee of re-

Respondent was directed by our orders in 1967 and 1972 to cease and desist from refusing to bargain in good faith. The master found that respondent and its president had nevertheless engaged in mere surface bargaining. The record makes this clear beyond peradventure

They were required to eliminate management's insistence upon unilateral control of all aspects of wage and working conditions which in turn meant union relinquishment of the statutory right to participate in grievance negotiations and the settlement of labor disputes with respect to changes in working conditions. The master's report makes plain this direction has been ignored in material part.

In addition, respondent failed to comply with the April 6, 1972 order as that order was concerned with the administration of the company's merit wage adjustment plan. Respondent was required by the order to (1) make a specific evaluation of its employees; (2) make available to the union the evaluations in substance and result; and (3) promptly enter into good faith negotiations with the union for a restructuring of the standards of employee evaluations used under the merit wage adjustment plan. Instead, respondent through its counsel and Box, the personnel officer, backed and filled in a farcical manner with the end result of substantial evasion of the order.[2]

Some of respondent's employees engaged in a strike beginning August 10, 1972 because of the failure of respondent to bargain in good faith. This strike was clearly an unfair labor practice strike. However, on September 18, 1972, respondent granted wage increases restricted to nonstriking employees, under the guise of not being able to evaluate those employees on strike.

One employee, Viyer Salinas, was relegated to assembly line work from his easier test stand job after being elected a union committeeman and attending bargaining sessions. The master found Salinas' treatment to be punitive and retaliatory for Salinas' union activities. This finding is supported by substantial evidence.

The employees in question have been without the union representation which the law accords them since April 5, 1967. This has been made possible by a recalcitrant employer taking advantage of the delays which inhere in the processes of law and particularly in labor law. It may be said however, that although the law does move slowly, a day of judgment will eventually come. We affirm the master's recommendation that respondent and its president be adjudicated in civil contempt of this court. We thus turn to the remedy to be invoked in concluding this matter.

The master recommended a contempt adjudication and purgatory order in precise terms. At oral argument we directed the board to submit a proposed order. It varies in some degree from the recommendation of the master. We permitted and have received the response of new counsel, employed subsequent to oral argument by respondent.[3] We have also considered the remedies applied by this court in other civil contempt adjudications in labor cases. See NLRB v. Schill Steel Products, Inc., 5 Cir., 1973, 480 F.2d 586; NLRB v. Crown Laundry & Dry Cleaners, Inc., 5 Cir., 1971, 437 F.2d 290. Skyline Homes, Inc. v. NLRB, 5 Cir., 1967, 381 F.2d 706. The make whole remedy for the union, employed in paragraph 15 of the Order, infra, is an extension of the remedy required in Schill, supra, within the context of the second civil contempt adjudication of the

spondent in the contumacious conduct is discussed in detail in the master's report.

2. Reference is made to the report of the master for the specifics of this proscribed conduct. No useful purpose would be served by repeating it here where our focus must be on remedy.

3. Oral argument was complicated to some extent by the fact that respondent's counsel was its chief negotiator and principal contact with the union, thus making it difficult for him to appear as an advocate when in reality he was a witness and appeared as a witness before the master.

respondent. On the make whole remedy in a mere failure to bargain setting, *cf.* United Steelworkers of America, AFL–CIO v. NLRB, 5 Cir., 1974, 496 F.2d 1342, 1349–1353; Food Store Emp. U., No. 347 Amal. Meat Cut. v. NLRB, 1973, 155 U.S.App.D.C. 101, 476 F.2d 546, 550–554.

■ We have formulated an order based on the proposals of the master and board and in light of the objections of respondent. It is couched in terms to bring the contumacious conduct of respondent and its president to an end but with harsh penalties being delayed for a period deemed reasonable for the purposes of reflection and the time which will be involved in recantation.

### ORDER

The Court having on April 14, 1975 filed its opinion finding that Johnson Manufacturing Company of Lubbock and its president Robert C. Johnson, Jr., violated the judgment against the Company of April 5, 1967 and the civil contempt adjudication against the Company of April 6, 1972, it is

Ordered and adjudged that Johnson Manufacturing Company of Lubbock and its president Robert C. Johnson, Jr., are in civil contempt of said judgment and adjudication and, it is further ordered that the Company and Robert C. Johnson, Jr., shall purge themselves of such contempt by:

1. Complying in full with the said judgment of April 5, 1967 and adjudication of April 6, 1972 and not in any way by action or inaction commit, engage in, induce, encourage, permit or condone any violation of said judgment or adjudication. This includes:

(a) the obligation to make a specific evaluation of all employees in connection with the Company's merit wage adjustment plan;

(b) the obligation to make available to Local 826, International Union of Operating Engineers, AFL–CIO (hereafter "the Union"), in substance and result, the evaluations of all employees made in connection with its merit wage adjustment plan;

(c) the obligation to enter into good faith negotiations with the Union for a restructuring of the standards of employee evaluation used under the merit wage adjustment plan, to the end that the Union may be effective as the bargaining agent in the area of merit increases;

(d) ceasing and desisting from insisting on unilateral and final control over employee wage and working conditions, and other matters which are bargainable subjects;

(e) ceasing and desisting from making unilateral changes in employee wages, hours, and working conditions, and failing to bargain in good faith with the Union with respect thereto;

(f) ceasing and desisting from discriminating in regard to hire or tenure of employment, or any term of employment, of any employee because of his or her presence on the Union's bargaining committee or because of any other Union activity;

(g) ceasing and desisting from retaliation or reprisals of any kind or nature against any employee because of activity in connection with the Union.

2. Notifying the Union in writing within 20 days after the entry of this order that it recognizes the Union as the exclusive representative of its employees in the designated unit and thereupon proceeding with the officials of the Union to set an initial date within 30 days from the entry of this order upon which bargaining sessions will recommence and thereafter proceeding to bargain in reasonably consecutive sessions until full agreement or *bona fide* impasse is reached and if any understanding is reached, incorporating such understanding in a written agreement. The existence of a *bona fide* impasse must be decided by this Court and the failure to find such an impasse will be considered failure to bargain in good faith, resulting in the sanction of paragraph 16 below. In no event shall the Company refuse to meet with the Union at any

reasonable time or withdraw recognition from the Union as such collective bargaining representative until further order of this Court.

Said bargaining sessions shall be attended by George A. Patterson, Jr., Vice President, Eagle-Picher Industries, Inc., or his successor in office, and any other representative or representatives which the Company may designate.

It having been represented to the court that John Edward Price, Esq., former counsel for respondent has retired from the active practice of law, he shall not be designated or appointed by the Company to act for it in any bargaining-representative capacity in its negotiations with the Union unless permitted by order of this court.

If the Union requests the attendance of a representative of the Federal Mediation and Conciliation Service at any one of the bargaining sessions, the Company shall acquiesce therein and shall not fail or refuse to attend any meeting because of the presence of such representative thereat.

3. Directing any individual or agent authorized by the Company to negotiate on its behalf to read this order and to signify in writing that he has read and understands it.

4. Forthwith making Viyer Salinas whole for loss of wages, if any, benefits or privileges as a result of the Company's reprisal against him, such amount, unless agreed upon by the parties, to be computed by the Board in a backpay proceeding, subject to further review by the Court.

5. Granting retroactively to all employees who went on strike August 10, 1972, or thereafter, other than those employees at the top of their grades, or probationary employees, such per-hourly wage increase as will be in conformity with the hourly wage increases previously granted to non-striking employees, and make each of such employees whole for any loss of wages suffered as a result of not being granted the per-hourly wage increases which were granted to non-striking employees. Such amounts, unless agreed upon by the parties, shall be computed by the Board in a back-pay proceeding, subject to further review by the Court.

6. Preserving and upon request making available to the Board or its agents at such reasonable place or places as the Board's Regional Director may specify for examination, copying and reproducing all the payroll, personnel, production and other records necessary or useful to determine the backpay due to Salinas and the strikers or to verify compliance with any provision of this order.

7. Furnishing the Union with the data and information required by this Court's order of April 6, 1972, and with all other data and information necessary for the Union to be effective as the bargaining agent for the employees of respondent Johnson Manufacturing Company of Lubbock with respect to all aspects of wage and working conditions which are properly bargainable subjects, including the information as to employees described in paragraph 10 below. When request by the Union for such data is in writing, it shall be answered by the Company in like form; and the Company shall forthwith advise the Union whether it will furnish the data and when, or shall specify the reason or reasons it relies on for refusing or delaying the information beyond two weeks from the date of the request.

8. Upon request of the Union made within six months from the date hereof, immediately granting to the Union and its representatives reasonable access to its bulletin boards and all places where notices to employees are customarily posted for a period of one year from the date of said request.

9. Upon request of the Union, affording it reasonable access to all non-work areas to communicate with employees in such area during non-work time. This is not intended to affect access to the plant to which the Union may be entitled by law during working time.

10. Upon request of the Union, immediately furnishing it with a list by name, address, job description, wage rate and date of hire of all the Company's

employees since April 6, 1972 and maintaining the list in current status so long as the Union remains the exclusive bargaining representative for the employees in the designated unit.

11. Posting in conspicuous places in its plant, including all places where notices to employees are customarily posted, for a period of 60 consecutive days, a copy of this adjudication, and, alongside, a Notice in the form provided by the Board, which shall state that the respondents have been adjudicated in contempt of the Court's orders and that they will undertake to comply with all of the purgation ordered by the Court. Said Notice shall be signed by president Johnson or his successor in office and on behalf of the Company by another officer thereof, and said copies of the adjudication and Notice shall be maintained in clearly legible condition throughout such posting period and respondents shall assure that they are not altered, defaced, or covered by any other material.

12. Filing sworn reports signed by both the Company and Union representatives with the Clerk of this Court with copies thereof to the Regional Director of the Board's 16th Region every 15 days after the initial bargaining session showing in detail the nature and course of the bargaining in summary form and appending thereto any written communications between the Union and the Company with respect to such bargaining. If either party has exceptions to the joint summary, separate additional reports setting forth differences may be filed. If upon investigation and analysis of such transcriptions the Board shall be of the opinion that the Company is not bargaining in good faith, it shall submit a report and supporting brief to the Court and propose appropriate sanctions.

13. Mailing to the home of each employee in the bargaining unit a copy of this order and of the aforesaid Notice and providing the Board's Regional Director of the 16th Region with proof of such mailing.

14. Reimbursing the Board for its costs and expenses, including counsel fees and salaries incurred in the preparation and presentation of these proceedings before the Special Master and this Court. Said amounts, unless agreed to by the parties, shall be fixed by further order of the Court upon submission by the Board of a verified statement of such costs and expenses. The Company is also directed to pay all Court costs, including all costs relative to the Special Master.

15. Reimbursing the Union for its expenses incurred by reason of the failure of the Company to comply with the adjudication of April 6, 1972, to wit: for salaries and expenses incurred by the union and bargaining committee members in attending bargaining sessions with the Company in connection with a collective bargaining agreement or merit wage increases since April 6, 1972, payments by the union to employees of Johnson Manufacturing Company who walked the picket line, and attorneys' fees and expenses. Said amounts, unless agreed upon by the parties, shall be computed by the Board as in a back-pay proceeding, subject to further review by the Court.[4]

16. In order to assure compliance with the provisions of this order it is further ordered as follows:

(a) A fine of $50,000 is hereby imposed on the Company, provided, however, that if the Company presents to the Court within 60 days from the date hereof, satisfactory evidence of compliance with

---

4. The type of expenses to be reimbursed are set out in the master's report as follows:

" . . . monetary expenses for mileage driven to and from Big Spring, Texas, and Lubbock, Texas, by its Business Manager and Business Agents; the actual time spent by the Union's Business Manager and Business Agents on negotiations and circumstances surrounding the Respondents' conduct regarding this litigation; telephone expenses; meals and lodging for the Union's Business Manager and Business Agents; payment of money by the Union to the pickets that were walking the picket line during the year strike and attorneys fees." We do not, of course, validate the amounts involved.

the terms of this order and thus purges itself of its contempt within said time, said fine shall be remitted.

(b) The Court reserves jurisdiction to take other appropriate action against respondent employer, president Johnson and any officer or agent of the Company responsible for non-compliance with any of the provisions of this order.

It is so ordered.