[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11–11561
_____

Agency No. 12-CA-17385


NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

GIMROCK CONSTRUCTION, INC.,

Respondent.


_____

Application for Enforcement of a Decision of the
National Labor Relations Board

_____

(September 18, 2012)


Before TJOFLAT, PRYOR and RIPPLE,* Circuit Judges.

_____

* Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh
Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

## I.

Gimrock Construction, Inc., is a heavy construction contractor engaged in bridge building, marine work, dredging, and road work throughout South Florida and the Carribean. In March 1995, the International Union of Operating Engineers, Local Union 487, AFL-CIO (the "Union"), became the representative of a collective bargaining unit containing "all [of Gimrock's] equipment operators, oiler/drivers, and equipment mechanics." Gimrock refused to bargain with the Union, and, in June 1995, its operating engineers, all hired out of the Union's hiring hall in Miami, went on strike.[1] A week later, the strikers offered to return to work, but Gimrock refused to reinstate them, claiming that they had been engaging in an unlawful jurisdictional strike.

The National Labor Relations Board (the "Board"), contrary to Gimrock's position, found that the strike was an economic strike and that Gimrock's refusal to reinstate the strikers violated section 8(a)(1) and (3) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(a)(1) and (3).[2] The Board therefore

_____

[1] At that time, Gimrock employed seven operating engineers.

[2] 29 U.S.C. § 158(a) states:

It shall be an unfair labor practice for an employer (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this

2

ordered the strikers' reinstatement with back pay.[3]  When Gimrock refused to comply with the order, the Board petitioned this court for enforcement.  In NLRB v. Gimrock Construction, Inc. (Gimrock I), we remanded the case to the Board for further findings on whether the strike was economic or jurisdictional.  247 F.3d 1307 (11th Cir. 2001).  On remand, the Board found that the strike was economic and, on June 30, 2005, reaffirmed its original order that Gimrock reinstate the strikers with back pay.   NLRB v. Gimrock Constr., Inc., 344 N.L.R.B. 1033 (2005).

Meanwhile, the Board, responding to Gimrock's persistent refusal to bargain with the Union, had charged Gimrock with violating section 8(a)(5) of the Act.  29 U.S.C. § 158(a)(5) ("It shall be an unfair labor act for an employer . . . to refuse to bargain collectively with the representatives of his employees[.]"), and an ALJ, following an evidentiary hearing, had recommended that the Board order Gimrock to bargain.  On June 30, 2005, the same day it ordered Gimrock to reinstate the strikers, the Board ordered Gimrock to bargain with the union. NLRB v. Gimrock Constr., Inc., 344 N.L.R.B. 934, 941–42 (2005).  Gimrock

_____

title; . . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization[.]

[3]  NLRB v. Gimrock Constr., Inc., 326 N.L.R.B. 401, 410 (2005).

3

refused to comply with both orders, so the Board petitioned this court for enforcement.

In NLRB v. Gimrock Constr., Inc. (Gimrock II), we entered an injunction enforcing both orders.  213 F. App'x 781 (11th Cir. 2006).  First, we ordered Gimrock, in the language of the Board's order, to "[c]ease and desist from . . . [r]efusing to bargain in good faith with the Union," and "[o]n request, [to] meet and bargain with [the Union]."  Gimrock Constr., Inc., 344 N.L.R.B. at 941–42. Second, again in the language of the Board's order, we ordered Gimrock to

> 1. Cease and desist from
>
> (a) Refusing to reinstate economic strikers to existing vacancies upon their unconditional offer to return to work.
>
> . . . .
>
> 2. Take the following affirmative action necessary to effectuate the policies of the Act.
>
> (a) Upon application, offer to those strikers who have not yet returned, immediate and full reinstatement to their former or subtantially equivalent positions, without prejudice to their seniority or other rights and privileges, dismissing if necessary all persons hired as striker replacements after June 6, 1995; and place on a preferential hiring list those striker applicants for whom positions are not immediately available.
>
> (b) Make whole any of the strikers for any loss of earnings and other benefits suffered as a result of the refusal to reinstate them to their former jobs in the manner described in the remedy section of this decision.

4

(c) Preserve and, within 14 days of a request, make available to the Board or its agents for examination and copying, all payroll records, social security payment records, time cards, personnel records and reports, and all other records necessary to analyze the amount of backpay due under the terms of this Order.

. . . .

(e) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

326 N.L.R.B. at 410, reaffirmed in 344 N.L.R.B. at 1039.

Following the issuance of the Gimrock II injunctive orders, the Board's Regional Director sought the information from Gimrock necessary to calculate the back pay owed to the seven strikers (six of whom had retired). When the information was not forthcoming, the Regional Director issued subpoenas requiring Gimrock's principals to produce the information. They ignored the subpoenas, so the Regional Director obtained a federal court order compelling compliance. See NLRB v. Gimrock Const., Inc., No. 07-22366 (S.D. Fla. Sep. 14, 2007). Gimrock partially complied with the subpoenas, but said that it was unable to produce some payroll records, including all the records from June 1995 to July 1, 1998. Consequently, the Regional Director had to fill in the gaps by extrapolating data from other time frames to determine the back pay. The

5

Regional Director used the strikers' Social Security records to determine the pay the strikers received on other jobs (in mitigation of their losses), which was then subtracted from the back pay due (without such mitigation) to calculate the net back pay owed to the strikers.  Once that calculation was made, the National Labor Relations Board's General Counsel served Gimrock with a Compliance Specification stating that Gimrock owed the seven strikers a total of $354,000 in back pay.[4]  The Compliance Specification also demanded that Gimrock—which, notwithstanding the Gimrock II enforcement decision, was still refusing to negotiate with the Union—meet with the Union for sixteen hours a week.

Gimrock, answering the Compliance Specification, contested General Counsel's back pay award and the bargaining demand.  Gimrock contended that the strikers were not entitled to back pay because (1) they had been offered reinstatement the day the strike ended, but had rejected the offer; and (2) they were still on strike (fourteen years later).  Gimrock also challenged General Counsel's back pay calculations on the grounds that they were speculative, used the wrong employees as comparators, and failed to take into account the strikers' failure to

---

[4] As initially served on Gimrock, the Compliance Specification sought $328,000 in back pay.  General Counsel subsequently acquired additional information relevant to the back pay calculation, increased the $328,000 figure to $354,000 on the basis of that information, and then amended the Compliance Specification accordingly.

mitigate their losses (through other employment). Gimrock objected to General Counsel's sixteen-hours-a-week bargaining demand on the ground that the bargaining unit no longer existed; aside from that, the request was unreasonable.

The issues raised by the Compliance Specification and Gimrock's response were referred to an ALJ for an evidentiary hearing. The hearing began on June 1, 2009. General Counsel established, through the testimony of the Regional Office's compliance officer, the back pay to which the strikers were entitled. General Counsel then called Gimrock's two principals as witnesses to demonstrate that the bargaining unit still existed and then rested his case. At this point, and before Gimrock commenced its defense, the ALJ announced that Gimrock II barred Gimrock's assertion that the strikers had rejected an offer of reinstatement and were still on strike. The ALJ thus limited the issues to the back pay calculations and Gimrock's assertion that requiring it to bargain would be a futile exercise. Gimrock challenged the back pay calculations through the testimonies of one of its principals, a union representative and the strikers.[5]

On November 16, 2009, the ALJ issued his decision. He rejected Gimrock's arguments that General Counsel's back pay calculations were speculative and used the wrong comparators, and that the strikers had failed to

---

[5] Six of the seven strikers testified. The seventh was deceased.

mitigate their losses.  The ALJ accordingly recommended that the Board award the strikers the back pay stated in the Compliance Specification.  He also recommended that Gimrock be required to bargain with the Union for sixteen hours a week.  Gimrock appealed the ALJ's recommendations to the Board.  Regarding the back pay calculations, Gimrock repeated the objections it raised before the ALJ.[6]  As for the bargaining recommendation, Gimrock argued that such a requirement would be appropriate only in an "egregious" case, and that its failure to bargain had not risen to that level.[7]

The Board adopted the ALJ's recommendations and ordered their enforcement in full.  After it became apparent that Gimrock's compliance would not be forthcoming, the Board petitioned this court for enforcement.  Gimrock, responding to the petition, argues against enforcement thusly.  First, we should deny enforcement of the back pay award because it is "punitive" and "arbitrary."  Second, we should deny enforcement of the bargaining requirement because the

---

[6]  Gimrock also argued the ALJ denied it the due process of law when, at the evidentiary hearing, he reversed a pre-hearing ruling denying without prejudice General Counsel's motion to strike part of Gimrock's answer (because it lacked the specificity required by the Board's rules of procedure) and granted the motion.  The Board rejected this due process argument.  We assume that it did so because Gimrock failed to demonstrate how the ALJ's ruling caused it any prejudice.

[7]  Gimrock abandoned its claim that the bargaining unit no longer existed by not presenting the claim to the Board.

Board lacked jurisdiction to modify this court's Gimrock II injunction by ordering it to bargain for sixteen hours a week; only this court had jurisdiction to effect the modification. According to Gimrock, once this court had assumed jurisdiction over the bargaining dispute in Gimrock II, only this court had the authority to modify its injunction.

## II.

We find no merit in Gimrock's first argument. The evidence before the ALJ fully supported the ALJ's recommendation—that the Board award the strikers the sum total stated in the Compliance Specification—and therefore the Board's adoption of the recommendation.[8]

We find merit, though, in Gimrock's second argument, that, once Gimrock II issued, only this court had the power to modify its order and, for example, require Gimrock to meet with the Union at set times. As the D.C. Circuit stated in Scepter, Inc. v. NLRB, 448 F.3d 388, 391 (D.C. Cir. 2006), "[t]he Board obviously cannot modify an order over which the court has 'exclusive' jurisdiction

---

[8] Gimrock also alleged that granting the General Counsel's motion to strike violated due process; denying Gimrock the opportunity to amend its answer was an abuse of discretion; and that the exclusion of evidence of union fines, threats, and Gimrock's offer of reinstatement was an abuse of discretion. These arguments are without merit.

9

or that the court has enforced in a final judgment."[9]  Thus, when it became

apparent that Gimrock was not going to comply with Gimrock II's injunctive order

requiring it to meet with the Union and bargain in good faith, the Board could

have petitioned this court to issue an order requiring the company to show cause

why it should not be held in civil contempt for refusing to comply with the

injunction.[10]  The Board's answer brief implies that this is, in substance, what

occurred in this case.  That is, the Board suggests that it used the Compliance

---

[9]  The Board, itself, has acknowledged that it lacks jurisdiction to modify an order issued by a court of appeals.  See D.L. Baker, Inc., 351 N.L.R.B. 515, n.31 (2007) (explaining that the Board "in the compliance phase . . . [was] not at liberty to modify" the back pay period to begin earlier than provided in the "[o]rder that has been enforced by a court of appeals."); Willis Roof Consulting, Inc., 355 N.L.R.B. No. 48, n.1 (June 17, 2010) (rejecting an employer's attempt to relitigate an issue at the compliance stage because "[t]he Board has no jurisdiction to modify a court-enforced order.").

[10]  We have previously noted that injunctions, including consent decrees,

are enforced through the trial court's civil contempt power.  If the plaintiff (the party obtaining the writ) believes that the defendant (the enjoined party) is failing to comply with the decree's mandate, the plaintiff moves the court to issue an order to show cause why the defendant should not be adjudged in civil contempt and sanctioned.  The plaintiff's motion cites the injunctive provision at issue and alleges that the defendant has refused to obey its mandate.  If satisfied that the plaintiff's motion states a case of non-compliance, the court orders the defendant to show cause why he should not be held in contempt and schedules a hearing for that purpose. . . .  At the hearing, if the plaintiff proves what he has alleged in his motion for an order to show cause, the court hears from the defendant.  At the end of the day, the court determines whether the defendant has complied with the injunctive provision at issue and, if not, the sanction(s) necessary to ensure compliance.

Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000) (internal citations omitted).

10

Specification and the ALJ's recommended order requiring that Gimrock meet with the Union sixteen hours a week to arrive at "purgatory" order this court could impose if it found Gimrock in contempt for failing to comply with the Gimrock II injunction.[11]

The Board cites two Former Fifth Circuit cases, which are binding on this court, in support of this position, NLRB v. Johnson Manufacturing Co. of Lubbock, 511 F.2d 153 (5th Cir. 1975), and NLRB v. Schill Steel Products, 480 F.2d 586 (5th Cir. 1973).[12]  Those cases are inapposite.   In both cases, the court of

_____

[11]  In its answer brief, General Counsel states the following:

[T]he compliance stage of Board proceedings is the very point in the proceedings when the Board should determine whether the circumstances warrant requirements in addition to a standard bargaining order.  Here, for instance, the Board found that the time and reporting requirements were warranted because Gimrock had refused to bargain since this Court, in December 2006, enforced the Board's bargaining order.  See NLRB v. Gimrock Constr., Inc., 213 F. App'x 781, 782 (11th Cir. 2006).  This case is therefore more aptly analogized to cases in which courts have held employers in contempt for refusing to bargain in violation of a court-enforced Board Order, and have ordered employers to comply with a bargaining schedule.  See NLRB v. Schill Steel Prods., 480 F.2d 586, 598 (5th Cir. 1973) (per curiam) (ordering employer to bargain with the union for at least 15 hours a week unless the Union agreed to less in writing); NLRB v. Johnson Mfg. Co. of Lubbock, 511 F.2d 153, 156 (5th Cir. 1975) (ordering bargaining to proceed in "reasonably consecutive sessions")[.] . . .  Although the standard for holding a party in contempt is admittedly higher than that required to simply find that a party violated the Act by refusing to bargain, Gimrock's longstanding refusal to bargain was in the face of a court-enforced Board Order.

Petitioner's Br. at 37–38.

[12]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to

appeals entered the purgatory orders after the court, on the Board's petition, issued a show cause order, the purported contemner failed to establish a lawful excuse for its refusal to bargain, and the court adjudged the contemner in civil contempt. Johnson Mfg. Co., 511 F.2d at 155; Schill Steel Prods., 480 F.2d at 596. The orders contained specific terms—the "keys to the jail"—which, if complied with, would enable the contemner to purge its contempt. Johnson Mfg. Co., 511 F.2d at 156–59; Schill Steel Prods., 480 F.2d at 596–99. In this case, the Board could have, as indicated above, petitioned this court for a show cause order. Then, if we held Gimrock in contempt following a show cause hearing, the Board could have proposed that we enter an order allowing Gimrock to purge itself of the contempt by meeting with the Union for sixteen hours a week.

The problem is that the Board has not moved this court for an order to show cause; it has eschewed the traditional means of obtaining compliance with an injunctive order. The Board also has not asked us to modify the Gimrock II injunction due to changed circumstances that render the extant injunction ineffective. Because the Board has pursued neither of these avenues of relief, we must deny its petition to the extent that it seeks enforcement of its order requiring Gimrock to meet with the Union for sixteen hours a week and, in doing so, bargain

October 1, 1981.

12

in good faith.  We enforce its petition regarding the reinstatement and back pay awards.

GRANTED, in part; DENIED, in part.